**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,                CASE NO. 2:17-cr-20683

v.                              HONORABLE DENISE PAGE HOOD

D-3 VERONICA SHARP,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S EMERGENCY**
**MOTIONS FOR IMMEDIATE RELEASE [ECF No. 138]**

## I. Introduction

On July 1, 2020, Defendant filed an Emergency Motion for Immediate Release [ECF No. 138. Defendant cites the threat of the spread of the Covid-19 at FCI-Hazelton as the basis for her motion. The Government timely filed a response in opposition to the Motion, and Defendant subsequently filed a supplemental letter.

## II. Background

In 2017, Defendant, along with co-defendants Damon Washington and Kenneth Gardner, conspired to rob casino patrons. Defendant would identify target patrons at the casino, notify her co-defendants of the target patrons, and her co-defendants would bump people on the highway after they left the casino in a simulated traffic accident.

Then, instead of exchanging insurance information when they approached the driver, the co-defendants would rob the targets at gunpoint.

In September 2017, Defendant suggested they target an Asian couple she knew from the MGM Grand. She told her co-defendants that the couple often won a lot and also kept large amounts of cash with them. Washington and Defendant waited outside the casino in his red Dodge Charger while Gardner waited in a stolen Jeep Cherokee. When the couple left, Gardner and Washington followed them to Lincoln Park where Gardner robbed them and carjacked their Toyota minivan.

Over the next week, Gardner, Washington, and Defendant robbed and/or carjacked multiple people leaving the MGM Grand. Sometimes the victims were targeted, but other times the victims were simply in the wrong place—near the casino—at the wrong time. Eventually, Defendant left the conspiracy after a fight with Washington. Gardner and Washington continued robbery and carjacking until they were caught on October 2, 2017. Defendant's role in the scheme was not realized until several months later.

In September 2018, Defendant pleaded guilty to her role in the conspiracy—a scheme that she instigated. At that time, Defendant blamed a gambling addiction for her crime and insisted that she had changed despite a long history of theft. But, five months later, police in Ohio stopped Defendant and three other people for a traffic

violation. The police discovered marijuana residue, three fake driver's licenses, eight counterfeit credit cards, and instructions on how to make more. Defendant was charged with felony counterfeiting.

Defendant began serving her 60-month sentence for the carjacking conspiracy in March 2019. She is incarcerated at FCI Hazelton in West Virginia, and her projected release date is May 28, 2023. Defendant is 42 years old. She has not identified – and her medical records with the Bureau of Prisons do not reveal – any underlying medical complications which would make her more vulnerable to Covid-19. Defendant has moved for compassionate release, complaining that FCI Hazelton's failure to test her for Covid-19 poses a threat to her health and her life.

### III.  Analysis

A court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). A court also must weigh the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement[]" with which courts must comply. 18 U.S.C. § 3582(c)(1)(A).

Section 1B1.13 of the Sentencing Guidelines states that a defendant must "not

3

[be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and limits compassionate release to a narrow group of defendants who satisfy at least one of four categories of "extraordinary and compelling reasons." Those four categories are based upon: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the Bureau of Prisons has set forth in Program Statement 5050.50.[1] U.S.S.G. § 1B1.13 cmt. n.1. *See also United States v. Sapp*, Case No. 14-20520, 2020 WL 515935, at *2 (E.D. Mich. Jan. 31, 2020) (Leitman, J.) (summarizing compassionate release requirements).

"Extraordinary" is defined as "exceptional to a very marked extent." Webster's Third International Dictionary, Unabridged (2020). "Compelling" is defined as "tending to convince or convert by or as if by forcefulness of evidence." *Id.* A court in the Eastern District of Michigan has described the requirements of "'extraordinary' as beyond what is usual, customary, regular, or common," and "'compelling reason' as one so great that irreprovable harm or injustice would result if the relief is not granted." *See Sapp*, 2020 WL 515935, at *3 (citations removed). And, as the Tenth

---

[1] The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances. Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (2019). *See also* 18 U.S.C. § 3582(c)(1)(A).

Circuit recently explained, a district court "lack[s] jurisdiction" to grant compassionate release when a defendant's circumstances do not fall within those categories. *Saldana*, 2020 WL 1486892, at *3.

In *United States v. Waseem Alam*, the Sixth Circuit Court of Appeals affirmed the district court's dismissal of the defendant's motion for compassionate release. 960 F.3d 831 (6th Cir. 2020). Defendant Alam sent a letter to the warden on March 25, 2020 requesting compassionate release. He did not wait for a response. Instead, Alam filed a motion for emergency relief in district court. The district court dismissed his motion because Alam failed to comply with the compassionate-release statute's administrative exhaustion requirement, 18 U.S.C. § 3582(c)(1)(A). The Court Appeals affirmed the district court's decision because Alam waited just 10 days after the warden's receipt of his request to file his motion in federal court, not the required 30 days.

In its analysis, the Sixth Circuit held that exhaustion is a mandatory condition, stating:

> Alam asks us to overlook [his failure to exhaust] by finding the requirement non-mandatory or by fashioning an exception of our own. But because this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it.

*Alam,* 960 F.3d at 832. In other words, a district court cannot excuse a defendant's

5

failure to satisfy the 30 day requirement pursuant to 18 U.S.C. § 3582(c)(1)(A).

The Court finds that Defendant has failed to exhaust her remedies. Defendant has not alleged or presented evidence that she exhausted her administrative appeals within the BOP or that she waited thirty days after submitting a compassionate release request to the warden of her detainment facility. 18 U.S.C. § 3582(c)(1)(A). As Defendant has not satisfied § 3582(c)(1)(A)'s mandatory exhaustion requirement, her claim is not ripe. The plain text of 18 U.S.C. § 3582(c)(1)(A) states that Defendant must either exhaust all administrative appeals or wait thirty days; Defendant has done neither. *Alam, supra*. *See also Grand Trunk W. R.R. Co. v. U.S. Dep't of Labor*, 875 F.3d 821, 824 (6th Cir. 2017) (quoting *King v. Burwell*, 135 S.Ct. 2480, 2489 (2015)) ("If the statutory language is plain, we must enforce it according to its terms."). For this reason, the Court denies without prejudice Defendant's Emergency Motion for Immediate Release.

The Court also finds that Defendant does not fall into any of the "extraordinary and compelling reasons" categories. She is young (42 years old) and has not identified any underlying health conditions. It is not the Court's role to speculate as to whether Defendant: (a) has a sufficiently serious medical condition that puts her at risk during the Covid-19 pandemic; or (b) if there are any other extraordinary or compelling reasons for her release. And, it is widely recognized that the Covid-19 pandemic does

6

not, in itself, qualify as the type of inmate-specific reason permitting compassionate release. *See, e.g., United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). As the *Raia* court stated, "the mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Id.*[2]

For the reasons set forth above, the Court concludes that nothing in the statute or U.S.S.G. § 1B1.13 supports the interpretation of § 3582(c)(1)(A) that Defendant seeks from this Court. *See Raia*, 954 F.3d at 597. The Court finds that Defendant's circumstances are not "extraordinary and compelling," 18 U.S.C. § 3582(c)(1)(A), and immediate release of Defendant is not warranted. Accordingly, the Court also denies the Motion on this substantive basis.

---

[2]Because Defendant has not demonstrated an "extraordinary and compelling" reason for granting compassionate release, the Court does not address whether Defendant would be "a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g).

## IV. Conclusion

Accordingly,

IT IS ORDERED that Defendant's Emergency Motion for Immediate Release [ECF No. 138] is DENIED.

Dated: October 2, 2020

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE